IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Tekoa Tobias Glover, | ) | |
| | ) | C/A No. 9:19-cv-01770-MBS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **OPINION and ORDER** |
| Chuck Wright, Sheriff of Spartanburg County; | ) | |
| Major Freeman, Spartanburg County Detention | ) | |
| Center; Captain C. Hayes; Lt. Freeman; | ) | |
| T. Medueder; Director Bodiford; Deputy Director | ) | |
| Hollister; Major Stowers; Lieutenant McCombs; | ) | |
| Sergeant Norris, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Tekoa Tobias Glover is a prisoner in custody of the Bureau of Prisons ("BOP") who currently is housed at La Tuna Federal Correctional Institution in Anthony, New Mexico. Plaintiff brings this action pro se pursuant to 42 U.S.C. § 1983 alleging violations of his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights during pretrial detention served at the Spartanburg County Detention Facility ("SCDF") and Greenville County Detention Center ("GCDC"). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to a United States Magistrate Judge for pretrial handling. This matter is now before the court for review of the Magistrate Judge's Report and Recommendation.

**BACKGROUND**

On June 21, 2019, Plaintiff filed a complaint alleging that Defendants had violated his constitutional rights during his service of pretrial detention on the following bases: a "postcard only" policy and "three-inch" of legal materials policy infringed on his right to free speech and

privacy and access to the courts; Defendants had interfered with his legal mail; he had been denied access to a law library or other legal materials; he had no means to complain to SCDF officials and others about conditions of confinement; and he was impermissibly punished by being placed in more restrictive custody without due process.[1]  Plaintiff requested declaratory and injunctive relief as well as damages.  Magistrate Judge Bristow Marchant issued a report and recommendation recommending that the court summarily dismiss the claims for declaratory and injunctive relief as moot because Plaintiff was no longer confined at either SCDF or GCDC; dismiss the claims regarding lack of access to a law library; and dismiss the Assistant United States Attorney as a defendant.  ECF No. 41.  The court adopted the recommendation and recommitted the matter to the Magistrate Judge for further pretrial handling.  ECF No. 46.  The case then proceeded with the following allegations at issue: Plaintiff was limited to the use of postcards for composing non-legal correspondence; Plaintiff was limited to accessing three-inches of legal materials at a time; Defendants failed to send some of Plaintiff's legal mail, opened some of Plaintiff's legal mail outside of his presence, and gave some of Plaintiff's legal mail to the government; Plaintiff was placed in more restrictive custody without due process; and Plaintiff was deprived of means by which to complain to SCDF employees regarding conditions of confinement.

      Defendants Director Chuck Wright, Major Freeman, Captain C. Hayes, Lt. Freeman, T. Medvedev[2], (collectively, "SCDF Defendants"), Director Bodiford, Deputy Director Hollister, Lieutenant McCombs, Sergeant Norris, and Major Stowers (collectively, "GCDC Defendants")

---

[1] Plaintiff was detained pending the outcome of the criminal action in *United States v. Glover*, 6:18-cr-00588-TMC in the District of South Carolina ("Underlying Criminal Action").  Plaintiff pleaded guilty to the charges then-pending and was sentenced on October 18, 2019.
[2] Incorrectly named in the caption as "Meduerder."  *See* ECF No. 84-1 at 1.

(altogether, "Defendants") filed an answer on March 18, 2020. The parties thereafter moved on a number of occasions for extensions of various pretrial deadlines, which requests Magistrate Judge Molly H. Cherry granted, and Plaintiff twice moved for an indefinite stay of the case, which requests the Magistrate Judge denied and granted in part, respectively. *See* ECF Nos. 79, 90. Ultimately, Defendants filed a motion for summary judgment on January 21, 2021, ECF Nos. 84, 87, to which Plaintiff did not file a response. Plaintiff filed a cross motion for summary judgment on March 1, 2021, ECF No. 96, to which Defendants filed a response in opposition, ECF No. 98. Plaintiff thereafter sought an additional stay of 30 days' time to allow for the adjudication of his BOP claim for the return of his legal property, ECF No. 102, which motion the Magistrate Judge interpreted as a request for an extension of time for the purpose of filing a response to Defendants' motion and which she granted, ECF No. 103.

On July 20, 2021, the Magistrate Judge issued a Report and Recommendation recommending that Defendants' motion for summary judgment be granted and Plaintiff's cross motion for summary judgment be denied (the "Report").[3] ECF No. 106. Pursuant to *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005), the Magistrate Judge advised Plaintiff of his right to file an objection to the Report. *Id.* at 27. Plaintiff filed an objection on August 12, 2021. ECF No. 108

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed

---

[3] The Report sets forth a detailed factual and procedural background, as well as the relevant legal standards, which the court incorporates here without recitation.

and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error. *Diamond*, 416 F. 3d at 315; *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Opriano v. Johnson*, 687 F.2d 44, 77 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## DISCUSSION

The Magistrate Judge recommends that judgment be entered in favor of Defendants on all claims on the basis that no genuine dispute of material fact exists. The Magistrate Judge additionally recommends that judgment be entered in Defendants' favor on the basis that Eleventh Amendment immunity bars the claims as asserted against Defendants in their official capacity; Defendants Wright, Bodiford, Major Freeman, and Hollister are implicated in a supervisory capacity only and pure supervisory liability is not cognizable in a § 1983 action; and Defendants sued in their individual capacity are entitled to qualified immunity.

Plaintiff objects specifically that Defendants admit they seized and read his incoming and outgoing mail and that while at GCDC he was disciplined without procedural due process as a result of certain mail that GCDC Defendants impermissibly seized and read. ECF No. 108. He asserts for the first time that in reading his legal mail, Defendants learned of and shared with the government the trial strategy in the Underlying Criminal Action. *Id.* at 4. And he objects that Defendants failed to produce logbooks, count sheets, and population sheets, which he contends he would use to show he was kept in segregation for "more than 24 hours." *Id.* at 7-8. Plaintiff does not object to the Magistrate Judge's finding regarding Eleventh Amendment immunity or recommendation that Defendants Wright, Bodiford, Major Freeman, and Hollister be dismissed

for lack of individual involvement and the court adopts the Report as to these findings. For the reasons discussed below, the court adopts the Report in part and grants in part and denies in part Defendants' motion for summary judgment and grants in part and denies in part Plaintiff's cross motion for summary judgment.

I.     **First Amendment and Sixth Amendment Claims**

    A.     **Letter to the President**

Plaintiff alleges the SCDF Defendants violated his First Amendment rights when they did not allow him to send a letter to President Trump. Defendant Hayes attests that there "were threats of violence in Plaintiff's letter, so the letter was returned to him." ECF No. 84-3 at 1. Plaintiff filed a grievance following the return of his letter. Defendant Hayes attests he "spoke to the Plaintiff . . . regarding his grievance and explained that he could send mail to President Trump, but per the SCDF Inmate Handbook it could not be threats of violence." *Id.* at 1-2. The Magistrate Judge interpreted Plaintiff's allegations as implicating a right of access to courts claim and a right to free speech claim. She found first that Plaintiff failed to show injury from Defendants' refusal to send the letter to President Trump, and therefore could not demonstrate that his right of access to court had been violated. ECF No. 106 at 12. She then found that Defendants' opening of the letter and refusal to send it was consistent with SCDF's "postcard only rule," which is "rationally related to a legitimate penological purpose to prevent contraband from entering the facility," and therefore did not violate Plaintiff's right to free speech. *Id.* at 16.

Plaintiff objects to Defendants' assertion that the letter contained a threat to the President and contends that Defendant Hayes admits in his affidavit that he impermissibly opened privileged mail. ECF No. 108 at 1-2. He asserts Defendants have "failed to produce the letter or a copy thereof showing that Plaintiff made threats to the President." *Id.* at 2.

First, regarding the assertion the letter was "privileged," Plaintiff does not allege in the complaint that the letter to the President was marked "legal mail," and impermissibly opened outside of his presence; rather he appears to allege only that he attempted to send a letter sealed in an envelope to the White House. *See* ECF No. 1-2 at 7, 19 (arguing Defendants "had no legitimate reason" to either "reject the mailing" or "open[] the envelope," and asserting he has "a right of privacy in [his] privileged communications"). However, as Defendants argue and the Magistrate Judge found, Defendants opened the envelope pursuant to a facility policy connected to a legitimate security concern regarding contraband. And, with respect to the burden of proof, Defendants attach Defendant Hayes's properly sworn affidavit to support their argument that they refused to send the letter in furtherance of SCDF policy. Plaintiff attests in support of his cross motion that he "did not mail a threatening letter to President Trump," and that "Defendant Hayes has lied by stating [otherwise]." ECF No. 96-1 at 2. Plaintiff's affidavit does not create an issue of material fact because it is undisputed that the subject envelope did not comport with the postcard policy and that the policy is rationally related to a legitimate security concern. The court finds no error in the Magistrate Judge's analysis with respect to this claim and therefore overrules the objection.

    B.    **Legal Mail**

Plaintiff alleges Defendants violated his First and Sixth Amendment rights by opening his legal mail. Defendants supplied affidavits in support of their motion for summary judgment asserting that no one opened Plaintiff's legal mail outside of his presence. *See* ECF Nos. 84-2 through 84-4, 87-1 through 87-3. Plaintiff asserts in his cross motion that "Defendants admit to opening mail labeled legal outside of Plaintiff's presence." ECF No. 96 at 5. The Magistrate Judge observed that the complaint references three specific instances in which Defendants

allegedly opened Plaintiff's legal mail.  *See* ECF No. 106 at 13 (citing ECF No. 1 at 19-27, 29-30).  As the Report discussed, in the first instance, on April 16, 2019, the record reflects that Defendant McCombs opened an envelope that was both suspicious in appearance and *not addressed* to Plaintiff.[4]  *Id.* at 13-14.  In the second instance, on April 22, 2019, there is no dispute that Defendant Norris opened the mail in Plaintiff's presence.  *Id.* at 14 & n.8 (citing ECF No. 1-2 at 8, 20).  In the third instance, on May 29, 2019, Plaintiff alleges he placed for delivery an envelope addressed to his court-appointed attorney and was informed the following day that Defendant Medvedev had opened the envelope and determined the letter was not legal in nature.  ECF 1-2 at 16-17, 29-32.  The Magistrate Judge found that Plaintiff had not provided any evidence to support the claim that the letter was in fact opened outside of his presence (or that the letter was in fact legal mail).  ECF No. 106. at 17.

Plaintiff objects that he is not responsible for the April 16, 2019 piece of mail.  He contends, "[i]f the Defendants can produce the letter, which Plaintiff requested in the production of documents, the court could make the proper determination that Plaintiff did not mail the letter."  ECF No. 108 at 2.  Omission of the letter from the evidence of record does not preclude the court from awarding summary judgment to Defendants on this claim because Plaintiff does not dispute (or offer evidence to dispute) Defendants' attestations that the subject envelope was

---

[4] It is worth noting that the April 16, 2019 envelope was addressed to the Greenville Police Department and showed a return address for a local attorney but was postmarked in Miami, Florida.  ECF No. 87-1 at 2.  Inside the envelope was a letter requesting incident reports and arrest records for a Jeremy Dean Robinson from 2015 through 2019.  *Id.* at 5.  The envelope also contained a stamped envelope addressed to Plaintiff at GCDC.  Jeremy Dean Robinson was a criminal defendant in another matter pending in the District of South Carolina at the same time as the Underlying Criminal Action.  *See United States v. Robinson*, 8:17-cr-424-TMC, ECF No. 1433 (D.S.C. Feb. 19, 2020) (entry of judgment).  The docket in the Underlying Criminal Action reflects that Plaintiff objected to the court sealing the transcript of Jeremy Dean Robinson's sentencing hearing.  *See Glover*, 6:18-cr-00588-TMC, ECF Nos. 637, 639, 640 (D.S.C. Sep. 27, 2020).

not addressed to him. As the envelope was undisputedly addressed to an individual other than Plaintiff, this particular piece of mail cannot give rise to a constitutional claim that Defendants opened Plaintiff's legal mail outside of his presence.

Plaintiff also objects to the Magistrate Judge's findings regarding the May 29, 2019 allegations, *see* ECF No. 108 at 7, but again has failed to produce evidence to rebut Defendants' attestations that they did not read his legal mail outside of his presence. The court notes the complaint is not verified and therefore cannot be used as an affidavit to create a dispute of material fact to preclude summary judgment. *See Goodman*, 986 F.3d at 498 ("a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge") (citation omitted). And, on summary judgment, the non-movant "cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Id.* (citation omitted). Accordingly, the allegations in the complaint detailing the May 29 letter addressed to Plaintiff's attorney do not give rise to a genuine dispute of material fact. The court agrees with the Magistrate Judge that "to the extent Plaintiff alleges there were other instances where his identified legal mail was opened outside of his presence, a conclusory allegation in the Complaint does not create a genuine issue of material fact sufficient to withstand summary judgment." ECF No. 106 at 15 (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002)). The court overrules Plaintiff's objection as to these claims.

**C.     Newly Alleged Injury**

Plaintiff objects that Defendants gave his mail to the government and asserts for the first time that Defendants "provid[ed] the government with [his] trial strategy." ECF No. 108 at 3-4. *See also id.* at 5, 6, 7 (alleging Defendants passed his legal mail to the government and thereby

revealed his trial strategy and denied him his right to a fair trial).  Thus, Plaintiff now alleges Defendants interfered in his ability to receive a fair trial by sharing his legal strategy with the government.  Even accepting that the complaint alleges this injury, which is a much more particularized version of the allegation that Defendants passed Plaintiff's legal mail to the government and thereby "gave the government an advantage in defending itself against plaintiff's defense," ECF No. 1-2 at 26-27, Plaintiff has produced no evidence to support the allegation.[5]  Accordingly, the court overrules the objection.

**II.     Due Process Claims**

    **A.     The SHU**

Plaintiff alleges that on April 16, 2019, while at GCDC, Defendant McCombs ordered him placed in the Special Housing Unit ("SHU") "for the disciplinary charge of Disorderly Conduct," and that he was informed of the charge "prior to being escorted to the SHU."  ECF No. 1-2 at 20.  Defendant McCombs attests that Plaintiff was placed in the SHU for three days at the GCDC because he improperly attempted to obtain information about another person without following the proper Freedom of Information Act procedure, and because he disguised that attempt as legal mail.  *See* ECF No. 87-1 at 2.  The Magistrate Judge found that to the extent Plaintiff alleges a denial of substantive due process, "it is clear the individually-imposed restriction—moving Plaintiff to SHU for three days—was a disciplinary measure imposed as result of Plaintiff's misconduct," and therefore did not amount to unconstitutional punishment.

---

[5] The court notes that the Fourth Circuit Court of Appeals recently vacated Plaintiff's sentence in the Underlying Criminal Action and remanded the matter for a plea withdrawal hearing with new counsel, on the basis that Plaintiff's original counsel acted with a conflict of interest.  *United States v. Glover*, --- F.4th ----, 2021 WL 3483282 (4th Cir. 2021).  There is no suggestion in that decision that the conflict of interest relates in any way to Plaintiff's allegations regarding his legal mail in this action.

ECF No. 106 at 20 (citing *Williamson v. Stirling*, 912 F.3d 154, 176 n.18 (4th Cir. 2018)). She further found that to the extent Plaintiff alleges a denial of procedural due process, Plaintiff acknowledges in his complaint that he was informed of why he was being placed in the SHU and he fails to show that GCDC Defendants failed to follow proper procedural guarantees in placing him there. *Id.* (citing ECF No. 1-2 at 20-27).

Plaintiff objects to the Report's finding regarding his procedural due process claim and asserts that he did not receive "due process measures because he wasn't given the opportunity to see his alleged offense nor any hearing to state his argument," and that "Defendants failed to follow their own policies and procedures in this regard." ECF No. 108 at 2-3; *see id.* at 8. Plaintiff further objects that the Report "fails to base its findings on facts such as records and documentation submitted by Defendants," and contends "the Defendants failed to produce log records of privileged and legal mail to and from the Plaintiff." *Id.* at 3.

1. *Substantive Due Process*

Plaintiff does not object to the Magistrate Judge's finding regarding the substantive due process claim. Nonetheless, the court has reviewed the record and concurs in the finding. As the Magistrate Judge correctly stated, Plaintiff as a pretrial detainee possesses a constitutional right to be free from punishment, *Bell v. Wolfish*, 441 U.S. 520, 534–36 (1979), and we evaluate claims as to conditions of confinement for state pretrial detainees under the Due Process Clause of the Fourteenth Amendment (rather than under the Eighth Amendment). *See id.* at 535 n.16; *Williamson*, 912 F.3d at 174 n.15. This type of claim requires the court to examine whether the condition complained of amounts to punishment of the detainee, "[f]or under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535. The government may detain a person in pretrial

detention so as "to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536.  As the *Bell* Court instructed:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."

441 U.S. at 538-39 (citations omitted).  The Court made clear, however, that "[t]his is not to say that the officials of a detention facility can justify punishment. They cannot." *Id.* at 539 n.20.  Rather, "[i]t is simply to say that in the absence of a showing of intent to punish, a court must look to see if a particular restriction or condition, which may on its face appear to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective." *Id.*  The court in *Williamson* gave further meaning to the direction set forth in *Bell*: "Importantly, the *Bell* factors could [] show that a restriction imposed on a pretrial detainee was 'disciplinary' but – if it was reasonably related and proportional to the detainee's misconduct during detention – that restriction would not be 'punitive' for purposes of a substantive due process claim." 912 F.3d at 185 n.25 (citing *Bell*, 441 U.S. at 540).

The record here is clear that Plaintiff was placed in the SHU at GCDC as a form of punishment.  ECF No. 87-1 at 2 (attesting that "Plaintiff was sanctioned to 3 days disciplinary detention for his actions and informed that he must use proper channels for obtaining public records").  However, Plaintiff advances no argument upon which the court could find that the restriction was neither reasonably related nor proportional to his misconduct.  Accordingly, the

court adopts the recommendation that summary judgment be entered in favor of Defendants on the substantive due process claim.

        2.   *Procedural Due Process*

Plaintiff alleges specifically in the complaint that "Defendant McCombs's actions violated Plaintiff's right to procedural due process for placing Plaintiff in the SHU." ECF No. 1-2 at 32; *see id.* at 20. As noted above, it is clear Plaintiff was placed in the SHU for disciplinary and not administrative reasons. *See, e.g.,* ECF No. 87-1 (attesting that Plaintiff "was sanctioned to 3 days' disciplinary detention for his actions"). Fourth Circuit law is well established that pretrial detainees are entitled to procedural due process in connection with any punishment imposed on them while detained. *Dilworth v. Adams*, 841 F.3d 246, 252-53 (4th Cir. 2016) (concluding "that disciplinary segregation of a pretrial detainee, intended as a penalty for disciplinary infractions, implicates a protected liberty interest under the Fourteenth Amendment and may not be imposed without due process"). Notwithstanding the fact that "the realities of the prison environment require some amount of flexibility in the due process inquiry," there are procedural minimums that must be met. *Id.* at 253 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (internal quotation marks omitted)). These procedural minimums include (1) a hearing and (2) written notice of the alleged disciplinary violation provided at least 24 hours before the hearing, as well as (3) a written statement, provided after the hearing, describing the reasons for the disciplinary action taken. *Id. See Williamson*, 912 F.3d at 175, 182.

The record reflects that Plaintiff ultimately received a written statement regarding the reason for his placement in the SHU, but that alone is insufficient to meet procedural due process requirements. The GCDC Defendants do not argue in their motion for summary judgment, let alone provide evidence to support, that Plaintiff received a hearing and written notice of

violation prior to his placement in the SHU.  *See* ECF No. 84.  In contrast, Plaintiff attests in support of his cross motion that "in 2019, while at [GCDC], I was placed in lockup at the direction of Defendant McCombs, for no reason, without any disciplinary proceedings."  ECF No. 96-1 at 1.  And while a prison or jail "may take immediate preventative action to segregate a detainee after a fight or disruption," and may place a detainee charged with disciplinary infractions in "administrative segregation" pending the disciplinary hearing to allow time to investigate, neither exception appears to apply here and in either instance "a hearing in connection with the final imposition of disciplinary action" must be held.  *Dilworth*, 841 F.3d at 255.

The court finds that there is no genuine issue of material fact that Defendant McCombs ordered Plaintiff placed in the SHU for the express intent to punish and did so without procedural due process.  The court further finds that such actions are a violation of well-established law such that Defendant McCombs is not entitled to qualified immunity as a defense.  The court sustains Plaintiff's objection and declines to adopt the recommendation as to this claim.  The court finds Defendant McCombs liable in his individual capacity for a violation of Plaintiff's procedural due process rights and grants Plaintiff's cross motion and denies Defendants' motion for summary judgment accordingly.

   **B.** **The BMU**

Plaintiff alleges the SCDF Defendants impermissibly punished him by placing him in the Behavioral Management Unit ("BMU").  ECF No. 1-2 at 8, 14-15, 20.  The SCDF Defendants argue they placed Plaintiff in the BMU "to complete the intake process after being transferred back to the facility so he would be aware of the policies and procedures at the SCDF."  ECF No. 84-1 at 11.  Defendant Major Freeman attests as follows:

> Plaintiff filed numerous grievances regarding the three inches of legal materials policy after being transferred back to the SCDF on May 10, 2019. Plaintiff was moved to the BMU on May 24, 2019 to finish completing the intake process so he would be aware of the policies and procedures at the SCDF. Per policy, Plaintiff has the right to switch out his legal materials as needed. Plaintiff was in the BMU for less than 24-hours to complete his intake process.

ECF No. 84-2 at 2-3. Attached to Major Freeman's affidavit is a copy of "Jail Events Summary Report," which reflects that Plaintiff was moved from general population to the BMU the evening of May 24, 2019 and returned from the BMU to general population the evening of May 25, 2019. *Id.* at 5. The Magistrate Judge found that to the extent Plaintiff alleges a denial of substantive due process, "it is clear the individually-imposed restriction—moving Plaintiff to the BMU for less than twenty-four hours—was an administrative measure imposed so Plaintiff could finish the re-intake process and be apprised of the SCDF's policies and procedures," and that this "is not unconstitutional punishment." ECF No. 106 at 21. She further found that to the extent Plaintiff alleges a denial of procedural due process, "[t]he record shows that the SCDF has a grievance/kiosk system that allows inmates to file grievances with the facility, just as Plaintiff admits he did on May 24, 2019," and, "[m]oreover, Plaintiff acknowledged that he was informed why he was being placed in BMU in his Complaint, and he fails to show, or allege, that SCDF Defendants otherwise failed to follow proper procedural guarantees in moving him there for re-intake." *Id.* at 21-22.

Plaintiff objects that "the simple matter of the BMU logbooks and Unit 3 logbooks and count sheets will prove that he stayed in BMU for more than 24 hours"; and that "Defendants' failure to provide the population sheets on May 22-24, 2019, deprives him of identifying witnesses to prove his factual statements." ECF No. 108 at 7. Plaintiff provides no evidence to contradict Major Freeman's affidavit that Plaintiff's placement in the BMU was an administrative measure related to finishing the intake process and educating Plaintiff about the

facility's policies and rules. Nor does he provide evidence to contradict the Jail Events Summary Report, which reflects that he was housed in the BMU for less than twenty-four hours. *See* ECF No. 96-1 at 2 (attesting that his attorney visited him in the BMU on May 24, 2019). Accordingly, the court accepts those facts as undisputed.

To the extent Plaintiff objects to the Report's finding regarding substantive due process, the record reflects that the SCDF Defendants' action in restricting Plaintiff is attributable to a nonpunitive rationale that is not excessive or out of proportion to the stated objective. *See Williamson*, 912 F.3d at 178. Therefore, Plaintiff did not suffer a violation of his substantive due process rights. To the extent Plaintiff objects to the Report's finding regarding procedural due process, the court notes that "a detainee confined for administrative purposes is entitled to at least the procedural protections mandated by *Hewitt* [*v. Helms*, 459 U.S. 460 (1983)]," which requires "an informal, nonadversary review of the information supporting segregation, including submissions from the detainee, within a reasonable time after confining him to administrative segregation." *Williamson*, 912 F.3d at 184 (quoting *Hewitt*, 459 U.S. at 472). The record reflects that Plaintiff received the process to which he is constitutionally due. Accordingly, the court overrules Plaintiff's objection regarding his time in the BMU.

As a final matter regarding due process, and despite Plaintiff's classification of his allegations concerning his legal mail as matters implicating his First Amendment rights, the court notes that to the extent Plaintiff also alleges Defendants violated his due process rights by confiscating his legal mail without his knowledge and by refusing to return the mail, the court finds he has not substantiated the claim. As discussed throughout this opinion and order, Defendants Medvedev and Norris and nonparty Laverne McKinney attest that no SCDF or GCDC personnel interfered with Plaintiff's legal mail, and Plaintiff has proffered no evidence in

rebuttal. Accordingly, the court finds that summary judgment should enter in Defendants' favor as to a due process claim regarding their treatment of Plaintiff's legal mail.

### III. Contentions Regarding Discovery

The court would address one final matter. In his cross motion for summary judgment, Plaintiff asserts that "Defendants have failed to produce the relevant documents needed to help prove and support Plaintiff's complaint," ECF No. 96 at 9-10, and attests similarly that Defendants "failed to produce documents requested by Plaintiff's second request in or about August 2020," and Defendants "failed to answer the second set of interrogatories filed by Plaintiff on the Defendants in or about August 2020," ECF No. 96-1 at 2-3. The record reflects that Plaintiff moved to compel these documents after he filed the cross motion for summary judgment, *see* ECF Nos. 94, 95, and Defendants responded that they had "responded to all discovery requests that the Plaintiff has sent [] in this case," ECF No. 97. The Magistrate Judge denied the motions to compel as moot, noting both that Plaintiff did not attach copies of the requested discovery and that Defendants represented they had submitted all requested materials, and directed Defendants to send "another copy of their responses to any discovery served on them by Plaintiff." ECF No. 99. Approximately six weeks later, Plaintiff requested an extension of time to allow for the resolution of his BOP claim regarding his legal property; he did not raise any concerns regarding requested discovery materials. *See* ECF No. 102.

The court finds the record does not support Plaintiff's contention that Defendants withheld discovery from him and thereby prevented him from either responding to the motion for summary judgment or presenting evidence in support of his cross motion for summary judgment. *Cf. Goodman v. Diggs*, 986 F.3d 493, 500 (4th Cir. 2021) (holding entry of judgment in defendants' favor was premature where discovery requests were still pending, citing specifically

16

plaintiff's "repeated filings seeking discovery . . . [and his] opposition to summary judgment, which asked the court to delay ruling until he could conduct discovery"). And to the extent Plaintiff objects now that Defendants failed to provide him with certain requested materials, the court finds that the objection is unduly delayed as raised five months after the Magistrate Judge entered the text order denying the motions to compel as moot.

## CONCLUSION

The court grants Plaintiff's cross motion for summary judgment, ECF No. 96, as to the sole issue that Defendant McCombs in his individual capacity violated Plaintiff's procedural due process rights and denies Defendants' motion for summary judgment, ECF No. 84, as to same. The court otherwise denies Plaintiff's cross motion for summary judgment and grants Defendants' motion for summary judgment. The court adopts in part the Report and Recommendation, ECF No. 106, consistent with the findings herein, and incorporates it by reference. Judgment shall enter consistent with this opinion and order.

**IT IS SO ORDERED**.

/s/Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

August 25, 2021
Charleston, South Carolina